### DE LONG HOOK & EYE CO. v. AMERICAN PIN CO.

(District Court, S. D. New York. October 17, 1912.)

1. TRADE-MARKS AND TRADE-NAMES (§ 11*)—NAMES OF PATENTED ARTICLES—EFFECT OF EXPIRATION OF PATENT.

   Complainant and its predecessors in business made and sold hooks and eyes under the name "The De Long Hook and Eye"; the hook alone being covered by a patent granted to De Long, and the name as so used being applied to such hooks when sold in connection with eyes of various styles. *Held*, under the evidence, that the name had become known to the public as a generic name, descriptive of the patented article, and not as indicating the source of manufacture, and that, on the expiration of the patent, other manufacturers of such hooks were free to use the name "De Long Hook" as descriptive of their product.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. § 11.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION.

   Where the owner of a patent has made and sold the patented article during the term of the patent, under a descriptive name by which it has become known to the public, and continues after the expiration of the patent, another manufacturer, although having the right to use the name in connection with the same article made by him, in order to avoid the charge of unfair competition, must so differentiate his product in its markings or dress that purchasers using ordinary care will not mistake it for the product of the original maker.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*

   Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper Bros., 30 C. C. A. 376.]

In Equity. Suit by the De Long Hook & Eye Company against the American Pin Company. On final hearing. Decree for complainant.

Rushmore, Bisbee & Stern, of New York City (Charles E. Rushmore, of New York City, of counsel), for complainant.

Edmund Wetmore and Oscar W. Jeffery, both of New York City, for defendant.

MAYER, District Judge. In October, 1889, letters patent of the United States, No. 411,857, were issued to Charles F. and Frank E. De Long, for an invention involving an improvement in hooks or fastenings for garments. In the same month the brothers De Long

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

entered into a copartnership with a Mr. Richardson, under the name of Penn Button Works, for the purpose of manufacturing and selling hooks and eyes under the above referred to letters patent, and these letters patent were duly assigned to the copartnership, which became the owners thereof. In May, 1891, the firm name of the copartnership was changed to that of Richardson & De Long Bros.

Immediately after the organization of the firm in 1889, they commenced to prepare for the manufacture of hooks and eyes, and about March, 1890, they commenced the manufacture and sale thereof. In May, 1900, a corporation, under the name of the De Long Hook & Eye Company, was organized under the laws of West Virginia to take over the business of Richardson & De Long Bros., who assigned and transferred to said corporation the letters patent above referred to, together with all trade-marks and other property rights belonging to said firm, and said corporation succeeded to all the interests and rights of Richardson & De Long Bros. in respect thereof.

The firm of Richardson & De Long Bros. continued to manufacture said hooks and eyes from March, 1890, until the organization of the De Long Hook & Eye Company, and the latter company continued the manufacture and sale thereof until May, 1907, when the West Virginia corporation transferred and assigned to the complainant (a corporation organized under the laws of Pennsylvania) all of its interest in all of its letters patent, together with all trade-marks and other property rights belonging to the West Virginia corporation. Since then the complainant has been the owner of and has succeeded to all the rights and interest of Richardson & De Long Bros. and of the West Virginia corporation, and has continued the manufacture of hooks and eyes until the present time, and is still manufacturing and selling the same.

The invention of De Long was simple, but ingenious, and proved a great commercial success. This success was attained, probably, through a combination of the merit of the article with able and energetic business methods. Through the period of the 17 years while the patent was alive, the De Long hook and eye had become very generally known, and with its clever and interesting advertising legends and catchwords had become familiar, not alone to the wholesale trade, but as well to the retail trade, which consisted almost entirely of the women purchasers of articles of this kind. The defendant insists that it has the right to use the name "De Long Hook," and that the manner in which it places its goods before the public is fair; while the complainant urges that it still possesses the sole right to the use of the designation the "De Long Hook," and that the methods of the defendant constitute unfair competition.

[1] 1. Upon the facts in this record, I am satisfied that the "De Long Hook" had become known to the public as descriptive of the patented article, and not as indicating the source of manufacture, or, in other words, that the name or phrase had become generic, and that, when the complainant lost its monopoly by expiration of letters patent, it also lost the use of this generic name, under the doctrine announced in Singer v. June, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118.

Complainant, however, insists that there are some distinctions between this and the Singer Case. Since the year 1890, the words "De Long Hook and Eye" have been used by complainant's predecessor and by complainant, as applied to their hooks and eyes generally and to their other products; but that fact does not differentiate this case from the Singer Case. The doctrine of the Singer Case could be readily avoided, if it were held that, because the distinctive or generic name applied to the patented article was used on other goods, therefore that the original patentee could retain the use of that generic name for the patented article, after his letters patent had expired.

No matter in what other connection the owner may have used the name, it must be remembered that one of the advantages of his patent monopoly has been to have his article known to the public by a name which in the public mind can only mean one thing as applied to that patented article, to wit, that it is the article. When, during the life of the patent, the public bought a Singer sewing machine, it bought a machine of a particular character, and associated solely in the public mind with the machines made under the Singer patents. I am confident that the result in Singer v. June would not have been different, if the Singer Sewing Machine Company had sold thread or other articles in connection with the use of the machine or independent thereof.

A more difficult question is presented by the contention of complainant that the defendant cannot use the words "De Long Hook," in view of the fact that those words have always been used in conjunction with the words "and Eye" so as to constitute the phrase "De Long Hook and Eye." I have not been able to find any case in which this precise question has arisen, because in the Singer and other cases, similar in principle, the generic name involved was the full name, and not part of the name. "Rahtjens" paints, Holzapfels v. Rahtjens, 183 U. S. 1, 22 Sup. Ct. 6, 46 L. Ed. 49; "Fairbanks" scales, Fairbanks v. Jacobus, 14 Blatchf. 337, Fed. Cas. No. 4,608; "Tucker" spring beds, Tucker v. Boyington, Fed. Cas. No. 14,229; "Wheeler & Wilson" sewing machines, Wheeler Co. v. Shakespeare, 39 L. J. Ch. 36; "Mason" fruit jars, In re Consolidated Fruit Jar Co., 14 O. G. 269.

It is undisputed that the "eyes" are in some instances unpatented articles, and in other instances articles upon which patents have not yet expired; and the question is, where the original name is conjunctive, may the defendant, or, in other words, the public, take part of that name, upon the theory that such part has been dedicated to the public use?

The answer to this question must be found to some extent in the history of the use of the invention, and to some extent in the practical or commercial purpose of the article. The eye used upon a woman's garment has long been known to commerce, and the problem which De Long sought to solve, and ultimately did solve, was to invent a hook by which this eye could be caught in such a manner as to be efficient and as to prevent the tearing or abrasion of a garment.

Prior to October, 1889, there were but two hooks in commercial use—one the Swan bill, and the other the Nichols; but, with a single

exception, there was no hook in commercial use having a resilient spring tongue. That exception was a certain hook patent called the "Eagle Hook." That embodied a resilient spring tongue, which lacked, however, the features of the complainant's hook, and was withdrawn from the market as a commercial failure. What, then, this particular trade was waiting for, and what De Long succeeded in inventing, was a successful hook.

In the patent specification (C. R., Plaintiff's Exhibit 1, lines 10-17) the applicant said:

"My invention consists of a hook or fastening for a garment, composed of front and rear portions, or the hook proper and the shank, formed of substantially parallel sides or bars, and a tongue having its free end forming a loop coincident with the bend of the hook; said tongue and loop being intermediate of said side bars."

And his claim was confined to a hook, as follows:

"A hook, comprised of a hook proper and a shank, formed of substantially parallel bars, and a tongue having its free end forming a loop coincident with the bend of the hook, said tongue and loop being intermediate of said side bars, substantially as described."

Mr. Richardson, of complainant company, when asked: "X. Q. 185. When you called your patented product the De Long Hook and Eye, * * * it referred only to the hook?"—answered: "Yes; it referred only to the hook." (C. R. fol. 181.) Other references to the testimony will demonstrate that the predominant purpose of the phrase "De Long Hook and Eye" was to designate the hook made in accordance with the De Long patent, and it seems to me so conclusive on the facts in this case that the public has been educated to understand the De Long Hook as applying to the patented article under consideration that again it may be said the doctrine of the Singer Case is applicable.

Suppose, for instance, the Singer Manufacturing Company had sold its machines under the name "Singer Machine and Thread"; would the decision of the Supreme Court have been any different? Or again, to illustrate: Suppose the Rahtjens paint had been sold in connection with brushes under the designation "Rahtjens Paint and Brushes"; would that have made any difference in that case? I think not, because it seems to m    that the test is whether the additional name, as in this case, "and Eye," refers to a separate article, and whether, to repeat, the name "De Long Hook" has become a generic name in association with the patented article.

I conclude, therefore, on this branch, that the defendant has the right to the use of the name the "De Long Hook."

[2] 2. But, even though the patented article and the distinctive or generic name have become public property, the original owners are entitled to fair competition. The courts have assisted in the development of fairer commercial dealing, and definitions of unfair competition are to be found in so many cases that the theory and principles involved are well understood. The difficulty lies in the application of those principles to a particular case. As said by Judge Gray in

Ludlow Valve Mfg. Co. v. Pittsburgh Mfg. Co., 166 Fed. at page 29, 92 C. C. A. at page 63:

"The power of courts of equity to restrain unfair competition is a very beneficent one, and is founded upon a basis of sound business morality. The opinion of the Supreme Court of the United States, in the Singer Case, while recognizing the right to the use of the word 'Singer,' as a generic description of the article, makes emphatic recognition of the duty of the court to require the name to be used in connection with such proper statements in advertisements, etc., as to guard against any possibility of deceiving the public as to the source of manufacture. No arbitrary rules have ever been, nor ever can be, laid down by which courts of equity will furnish this protection. To establish such rules would, like definitions in the law, furnish the means by which fraud could successfully accomplish its ends. Courts of equity may require such form of words to be used in connection with the appropriated name as will completely protect the rightful owner of that name from injury and the public from imposition, and a defendant so using the name has no just right to complain of any form of words in connection with the name, the only purpose and effect of which is to prevent appropriation by him of the fruits of another's business enterprise and skill."

Just what constitutes unfair competition depends on the manner and method in which the article is placed before the public, in connection with the character of the article, the circumstances under which it is purchased, and the class of usual purchasers. A railroad, buying a locomotive engine, would presumably give a fair degree of deliberation to the transaction, and it would not be easy to deceive the purchaser; but the case is quite different where the article is small, purchased without much attention, and under circumstances unlikely to place the purchaser on his guard.

The articles here under consideration are purchased in a large way by dressmakers and dealers; but the great purchasing public, as the evidence demonstrates, consists of women, who make these purchases usually from the notion counters of stores. If the general appearance and make-up of two articles of this character are similar, the purchaser rarely discriminates.

It is true that no one can pre-empt simple and obvious designs; but the constant use of a particular style of lettering, the location of the name of the article or maker at a particular place on the article, the arrangement of the constituent parts of the article in a particular way, all combine to create an impression upon what may be called the public eye. Although each one of these elements may be simple and open to anybody, the tout ensemble may have become so familiar as to be a valuable means of identifying goods and holding the market for them.

It is sometimes difficult to draw the line between the keen and the unwary purchaser; but, in trying to determine how an article is placed before the public, it is important (if possible) to see with the eye of the ordinary purchaser of the article in question. Colloquially stated, it seems to me that, when a woman goes to a store and picks up a card of De Long hooks, there should be something to suggest the inquiry:

"Is this the De Long hook? It does not look like the card I have been used to buying."

Thereupon the saleswoman can put forth her arguments, and say that it is the De Long hook, made by a different factory or company, but just as good as, or better than, the original, and so forth, and so on. That is fair competition, and, if the defendant's De Long hook is bought, then defendant is entitled to the fruits of such competition.

But, if the ordinary purchaser of articles of this kind may readily be deceived, then the competition is unfair, and under such circumstances great injury might be done to complainant, and in course of time inferior material might be used in manufacture, and the good reputation of the merchandise impaired. There is no suggestion here of inferiority of the merchandise of the defendant, but such a situation might at any time arise.

Of course, when the defendant's card (Complainant's Exhibit No. 4) is placed side by side with the complainant's various cards, and the eye is fixed upon these two cards, in comparison or contrast, there is no deception; but the goods are not sold in that way, and it seems to be agreed that the purchaser at retail of these cards buys hurriedly, and looks at the top line, as the place to which he or she has been accustomed to see the designation "De Long Hook." In two particulars it seems to me the card of the defendant should be corrected—one, in the character of the type, "The De Long Hook"; and the other, in the location of that phrase upon the card.

It is true that complainant's card has introduced a shading of the letters which is absent from defendant's card; but I have experimented a good deal, and I am confident that the shading is not so distinguishing in character as to relieve the general resemblance in the type used on both cards. It is easy, it seems to me, for defendant to use some other kind of type, which shall not be of the same character as the type used on complainant's card, in so far as the words "The De Long Hook" are concerned. I am also satisfied that while many cards of all kinds of hooks have the name of the hook on the top line, and many do not, so that the location of the name of itself is not the sole right of any manufacturer, yet that the public has been so used to seeing this name upon the top line of the card that it is not fair for the defendant to have the name upon that line. I find no other respect in which the defendant has violated the rules of fair competition. The defendant is entitled to a card of the shape of that in evidence, and I think it is also entitled to card "eyes" on the same card with the hooks. I find nothing objectionable in the boxes or cartons.

I shall be glad if a decree can be agreed on between the parties, which shall regulate the form and appearance of the cards as indicated in this opinion. If not, a decree will be entered in accordance herewith, substantially on the principle of the decree in the Ludlow Valve Case.