### YALE & TOWNE MFG. CO. v. WORCESTER MFG. CO.

(District Court, D. Massachusetts. June 23, 1913.)

No. 368, Equity.

1. TRADE-MARKS AND TRADE-NAMES (§§ 11, 71*)—NAMES APPLIED TO PATENTED ARTICLES—RIGHTS AFTER EXPIRATION OF PATENT.

While the name of a patentee used as a mark or in advertising to designate the patented article cannot be monopolized as a trade-mark after the expiration of the patent, it may also have become in some degree significant of origin with the public, and in such case its subsequent use by a competitor must be in such manner or in connection with such notice that purchasers will not be deceived as to the manufacturer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 15, 82; Dec. Dig. §§ 11, 71.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 71*)—NAMES APPLIED TO PATENTED ARTICLES—RIGHTS AFTER EXPIRATION OF PATENT.

For 12 years before the expiration of a patent for a door check, complainant made and sold such checks under a contract with the owner of the patent, and had marked the same with the name "Blount," who was the patentee, and its own name. During the same time others had made under the patent, but none had marked them with such name. Two years after the expiration of the patent, defendant commenced the manufacture of a door check very similar in appearance to those of complainant, and placed on the plates attached thereto the name "Blount" in conspicuous letters, followed by its own name in much smaller letters. It also advertised them in the same manner. Held, under the evidence, that during the preceding 14 years the name had come to indicate in part the door checks made by complainant, and that its use by defendant was a violation of complainant's rights; that it was entitled to have defendant make the name less, and its own name more, conspicuous, and otherwise indicate clearly that its door checks were not those of complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. § 71.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. TRADE-MARKS AND TRADE-NAMES (§ 75\*)—UNFAIR COMPETITION—PROOF OF DECEPTION.**

In a suit for unfair competition, proof of actual deception is not necessary, but the court may determine without it from the exhibits themselves whether deception will be the natural and probable result of their use.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.\*]

In Equity. Suit by the Yale & Towne Manufacturing Company against the Worcester Manufacturing Company. Hearing on amended and supplemental bills. Decree for complainant.

J. Lewis Stackpole, Boyden, Palfrey, Bradlee & Twombly, and Fish, Richardson, Herrick & Neave, all of Boston, Mass., and Archibald Cox, of New York City, for complainant.

Henry F. Harris, of Worcester, Mass., and Roberts, Roberts & Cushman, of Boston, Mass., for defendant.

DODGE, District Judge. The plaintiff's original bill in this case was dismissed. The dismissal was affirmed by the Court of Appeals April 9, 1912. See 195 Fed. 528, 115 C. C. A. 491. Under permission given in the mandate filed here July 13, 1912, the plaintiff has so amended its bill as to limit the relief therein asked to relief of the character indicated by the Court of Appeals in its opinion above cited. It has also filed a supplemental bill complaining of an advertisement put forth by the defendant in August, 1912, as a further violation of the rights which it claims in the name "Blount." This advertisement contains the statement by the defendant: "We make the original Blount."

Two matters originally in controversy between the parties appear from the opinion above cited to have been settled by the Court of Appeals: (1) The Blount patents having expired, the defendant violates no right of the plaintiff merely by using the name Blount on door checks such as were covered by the patents while in force. (2) The plaintiff has not succeeded in proving that the defendant's door checks in question are purposely made so as to simulate the structural appearance of the plaintiff's door checks.

The opinion and the decree therein directed, however, have left the plaintiff free to ask the court for a certain "special remedy," namely, that the defendant be ordered (1) not to give offensive prominence to the word "Blount" on its door checks or otherwise; (2) also to announce on its door checks and otherwise, "This was not manufactured by the original inventor, Blount, or its successors," or something to that effect. The opinion requires the plaintiff, if it makes this application to the court, to state frankly in its pleadings all the special facts showing that it needs the special remedy described, is entitled thereto, and has consistently rested its claims accordingly as between itself and the defendant.

The special facts upon which the plaintiff now rests its present application appear to be, for the most part, facts set up in its original

bill. The material allegations of fact added thereto by the amendment may be summarized as below:

(1) The name "Blount," in fact, served as a means whereby the trade and the public identified door checks made by the plaintiff's predecessor and distinguished them from similar checks made by others, and was in fact relied on as a guarantee that door checks bearing it were the genuine manufacture of the plaintiff's predecessor, at the time when the plaintiff took over the business of manufacturing and selling them in 1895 and 1896.

(2) The door checks made by the plaintiff and its predecessor embodied the inventions covered by the Blount patents which expired in 1900 and 1908, but from a time before the word "Blount" was placed upon the article itself, door checks covered by said patents were continuously made and sold by other manufacturers under other names.

(3) The defendant's use of "Blount" is misleading and fraudulent, in that it marks its door checks "Blount Improved Door Checks" without accompanying such marking with statements or warnings sufficient to notify the public and purchasers that they are not made by the plaintiff.

(4) "Blount" is displayed on the defendant's door checks and in its circulars in large and conspicuous type such as to make the word the dominating and conspicuous feature of the marking; while less conspicuous beneath are displayed the words "Improved Door Checks," and beneath the whole, in letters comparatively small and unobservable, the words "Worcester Mfg. Co." This use of "Blount" is likely to deceive unless the prominence given to the word over the accompanying matter, as above, is forbidden, and some clear, conspicuous statement required that the door checks so marked or advertised are not of that manufacture which the public has been accustomed to seek by the word "Blount."

Neither party has examined any witnesses under the pleadings filed since the decree entered here under the mandate. There has been introduced, however, a stipulation setting forth certain agreed facts or agreed testimony, with exhibits referred to therein; also certain correspondence between the parties. Further reference is made below to what has been thus introduced.

In its answer to the amended bill the defendant denies, as it had previously denied, that "Blount" does or ever did indicate origin or manufacture by the plaintiff, and avers that it indicates only manufacture in accordance with the expired Blount patents. In answer to the allegations added by amendment and summarized under 1 above, it denies that the plaintiff has ever used the word on its door checks except to identify their structural features and mechanical organization embodying the Blount invention. The allegations summarized under 2 and 3 are denied. With regard to those under 4, besides denying them, it avers that "Blount" as used by it has always been accompanied by words indicating clearly and unequivocally that its door checks so marked are made by it and no one else.

The defendant insists that the bill as amended states no case other than that stated in the original bill and closed by the judgment of dis-

missal; also, that nothing has been added by way of evidence to what was proved under the original bill, and that the amended bill ought to be dismissed, because not such a bill as contemplated by the Court of Appeals in its opinion. I am unable to take this view of the matter. I do not understand the Court of Appeals to have held that the facts set forth in the original bill would not justify the court in granting the kind of relief now applied for. They were there presented in a different aspect and for a different purpose, but I see nothing to prevent the plaintiff from relying upon them for its present purpose, even if what has been added be regarded as immaterial, if adopted by it as a frank statement of all the special facts showing its need of and its right to the special remedy now sought. Nor does it seem to me that the added allegations in the amended bill can be regarded as immaterial upon the questions now presented.

[1] The Circuit Court said in dismissing the original bill (July 10, 1911) that no one after the patents had expired could "acquire a monopoly in the name 'Blount' on the theory that it had become a trademark or trade-name denoting origin." It may nevertheless be true that in some degree the name has become significant of origin with the public, and that, so far as it has obtained such significance, it indicates manufacture by the plaintiff. If this is true, though the defendant is not forbidden altogether to make use of the name, it is forbidden to use it so as to take advantage of these facts, because such use would be trading on the plaintiff's reputation. If it undertakes to use the name under such circumstances, it must therewith convey such notice to the public as will be a reasonably sufficient protection against such danger as may exist that people will thereby be led to suppose that they are getting the plaintiff's make of door check when they are not.

[2] As appears from the opinion of the Circuit Court, the Blount patents date from 1883 and 1891. The latest in date expired in 1908. The defendant began its use of the name in 1910. The plaintiff was then making and selling door checks under the patents. It had made them since 1896 under a contract with the Blount Manufacturing Company, which owned the patents and had previously been making the door checks. The plaintiff is also shown to have had the exclusive selling agency since 1895.

It appears that until late in 1895 or early in 1896 door checks made and sold under the patents bore no other mark than that indicating the fact that they were patented and the dates, though they were advertised as "Blount" door checks, and known in the trade by that name. The practice of marking them with the word "Blount" was adopted soon after the plaintiff became the exclusive selling agent, but before it began making them. At the plaintiff's request, the words "Yale & Towne" were also then used on the label adopted, over the word "Blount" but in smaller letters. Beginning with 1896, all door checks made by the Blount Manufacturing Company and since September, 1896, by the plaintiff have been always thus marked. Other manufacturers during the same period have made and sold door checks covered by the patents, but none of them, whether licensed under the pat-

ents or not, have used the name "Blount." This name, before the defendant began to use it in 1910, was used only upon door checks made by the plaintiff and its predecessor, the Blount Manufacturing Company.

I think the evidence requires the conclusion that between 1896 and 1908, during which 12 years the public were accustomed to purchase under the name "Blount" door checks made by the plaintiff only, and known to be made by it through the association of its name with "Blount" on the label, the name "Blount" came to represent origin with the plaintiff in the public mind. That it represented origin and nothing else, as the plaintiff contends, does not seem to me proved; it was also generally known that such door checks were made under patents issued to Blount and no one else, so that the name cannot be said to have been used without any descriptive significance. But I am unable to see why it may not fairly be said that the name had come to indicate the origin quite as much, at least, as it did the kind of the door check whereon it appeared. If so, or if in some substantial degree it had come to indicate origin, as I think it certainly had, its use by the defendant so far misrepresented the truth.

If these conclusions are right, the next question is whether or not the defendant's use of "Blount" conveys, on the facts shown, adequate notice to the public that the word is not being used to indicate origin. This question is to be determined mainly from the labels and advertisements themselves which the defendant actually uses or publishes and which are before the court as exhibits.

Enough has been said to show that the defendant could not be allowed to use the word "Blount" by itself and without accompaniment of any kind by reason of the fact found that the word implies origin in some degree. Nor does the defendant undertake so to use the word. It does accompany the word with its own name, and thus, to some extent, indicates that it and not the plaintiff makes the articles. But its labels and advertisements, however, do undeniably so present the word "Blount" as to make it distinctly more conspicuous than any of the other words used with it. The label plates attached by it to its door checks in one respect present the word more conspicuously than the plates used by the plaintiff itself, in that "Blount" is the first word of the legend upon them, whereas on the plaintiff's plates it comes after and below "Yale & Towne." This appears in the opinion of the Circuit Court as included in that of the Circuit Court of Appeals (195 Fed. 528, 529), where the words on both plates are quoted. The maker's name, on the other hand, is decidedly less conspicuous on the defendant's plates than on the plaintiff's, because not only does it come last and below everything else, but it also appears in letters distinctly less in size than any other lettering on these plates. Reproductions of the plaintiff's plates on a reduced scale appear in complainant's circulars A. and B. Defendant's circulars A. and B., being advertisements put forth by the defendant, likewise contain similar reproductions of its plates, and from them appears the decided prominence I find to be given to the word "Blount" on the labels or plates themselves.

Moreover, although the Court of Appeals has declined to find that

the structural appearance of the defendant's door checks has been purposely made to simulate the structural appearance of those made by the plaintiff, the resemblance in structural appearance is so close as, in my view, to increase materially the danger that false impressions regarding origin may be conveyed by the prominence given as above to the word "Blount."

No doubt sufficient scrutiny of the defendant's labels, plates, and advertisements referred to reveals the defendant's name on them as manufacturer, but the danger above mentioned is not, in my opinion, materially diminished by this fact. The name as there displayed attracts no such attention as does the word "Blount." That the mere presence of his name, under circumstances like these, will not relieve a defendant from the charge of unfair competition, is well settled.

[3] There is evidence, both in the original record and in the stipulation above mentioned, tending to show that purchasers ordering "Blount" door checks and expecting the plaintiff's have been supplied with the defendant's door checks. It is claimed by the plaintiff and denied by the defendant that this evidence proves that the public are being misled by the defendant's use of the name. It seems to me unnecessary to discuss this question apart from the exhibits themselves. Proof of actual deception is not necessary. The court may determine without it, from the exhibits themselves, whether deception will be the natural and probable result of their use. Notaseme, etc., Co. v. Straus (C. C. A.) 201 Fed. 99, 100. I am unable to doubt that some deception would be their natural and probable result in this case, or that their use has had that result.

The prominence which the defendant gives to the word "Blount" I must regard as "undue and offensive" prominence, on the facts above found. That the word has continued to carry with it, after the expiration of the Blount patents, an indication of origin, instead of becoming a merely descriptive word, is enough to confine the defendant's right to use it within such limits, as to prominence over accompanying matter, as have been held necessary in similar cases. See, among the more recent decisions, Ludlow, etc., Co. v. Pittsburg, etc., Co., 166 Fed. 26, 31, 92 C. C. A. 60: De Long, etc., Co. v. American, etc., Co. (D. C.) 200 Fed. 66, 71. To correct its labels, plates, and advertising matter in this respect, I think the defendant will have, at least, to put its own name before and immediately over the word "Blount," displaying the latter word in letters no larger than those in which the other words of the legend appear.

That the defendant's present use of "Blount" tends to deception regarding the origin of its door checks is no doubt partly because of the undue prominence it has been giving to the word as above found. Changes of the kind above indicated would go far to remove all grounds of objection, but would still, in my opinion, fail to give that adequate notice to the public that "Blount" did not mean origin with the plaintiff contemplated by the Court of Appeals; nor do I see how such notice could be adequately given without an explicit announcement of the truth, not necessarily in the very words suggested by the Court of Appeals, but to the same effect. Unless conjoined with some-

thing of the kind, the word might well still be the means of conveying to the public the notion that door checks marked as suggested were the product of a maker "in some privity with the established manufacture * * · * which the public already knew and liked." Herring, etc., Co. v. Hall, 208 U. S. 554, 559, 28 Sup. Ct. 350, 352 (52 L. Ed. 616). As was there said, to convey any such notion would be a fraud, and would have to be stopped.

It is evident that the defendant's offer filed with its answer to the amended bill does not tender the plaintiff as much as it is entitled to claim. The above conclusions entitle it to a decree, but the first condition of the offer is dismissal of the bill. The changes, however, in the defendant's labels, plates, and advertisements promised in paragraph 2 of the offer, seem to me to come very near accomplishing all that has been above held necessary. They remove the objection that "Blount" is too prominently displayed. They will put above "Blount," not the defendant's name as manufacturer, but the word "Worcester," which, used in the position proposed, would be a "differentiating word placed before and in juxtaposition" with "Blount," and will thus comply with one of the forms of relief asked in 3 of the prayers for relief made in the amended bill. "Worcester," indeed, is to appear above "Blount," not only on the defendant's labels, plates, and advertisements, but also on the caps of the door checks themselves. Thus used, it seems to me a reasonably sufficient notice to the effect required.

As to what the supplemental bill alleges, while I think the advertisement complained of, published in August, 1912, a further infringement of the plaintiff's rights, and this notwithstanding its "Yale" door checks, put on the market in June, 1912, just before its amended bill was filed, the advertisement was inadvertently issued, it was not repeated or continued, and, so far as I can see, it entitles the plaintiff to no relief beyond that which will be afforded by the decree now to be ordered. That it has impaired the value of "Worcester" as a distinctive mark of origin does not seem to me proved.

The decree to be entered will be, to the extent above indicated, in favor of the plaintiff, and in accordance with the prayers of the amended bill. There may be a further hearing as to its particular provisions, unless the parties can agree upon them.