**URECAL CORPORATION, Plaintiff,**

v.

**John MASTERS, and Corrosion Control, Inc., Defendant.**

**No. 75 C 46.**

United States District Court,
N. D. Illinois, E. D.

May 24, 1976.

E. William Bedrava, Bedrava & Niemi, Chicago, Ill., for plaintiff.

Glenville Haldi, Atlanta, Ga., for defendant; Joseph Borenstein, Chicago, Ill., (Local counsel).

## MEMORANDUM OF DECISION AND ORDER

JULIUS J. HOFFMAN, Senior District Judge.

In this action in which the unfair trade practice of "passing off" is alleged, a manufacturer and seller of industrial paints and coatings, Urecal Corporation (Urecal), seeks equitable and legal relief against its former distributor, Corrosion Control, Inc. (Corrosion). The action was tried to the court, the jurisdiction of which is based on the diversity of citizenship provisions of 28 U.S.C. § 1332, the plaintiff being an Illinois corporation with its principal place of business in the Village of Schaumburg, Illinois, and the defendant being a Georgia corporation with its principal place of business in Atlanta, Georgia.

At the commencement of trial, the complaint contained three counts and included John Masters, formerly the president and technical advisor of plaintiff and presently the vice-president of defendant, as a party defendant. Masters was dismissed from the action at the close of plaintiff's evidence. Subsequently, Counts I and II were

dismissed as to defendant Corrosion. In addition, the counterclaim Corrosion had filed against the plaintiff was dismissed without prejudice. The only matters pending for decision, therefore, are those contained in Count III, as amended, against Corrosion Control, Inc.

In Count III, plaintiff alleges in substance that Corrosion, by using labels bearing the name and trademark of plaintiff, "passed off" inferior paint not actually manufactured or sold by plaintiff, as a product of the plaintiff. Urecal asserts that its corporate name is "fanciful and arbitrary," and of economic value attributable to use of its name in sales and advertising. Further, plaintiff avers that it utilized a "distinctive and fanciful" marking on its labels, and that during the latter part of 1972 and through 1973, Corrosion sold a quantity of paint under the label "Urecal No. 807," which bore the mark of plaintiff, to contractors for the cities of Greeneville and Kingsport, Tennessee. It is alleged that the paint was fraudulently sold pursuant to a Urecal warranty, when in fact the product was neither that of Urecal nor suitable for the interiors of tanks designed to contain drinking water. Plaintiff claims that the actions of defendant have damaged its business reputation and produced an "unknown" loss of profits. The prayer is for "actual," as well as exemplary damages, and for an injunction prohibiting, *inter alia*, use by defendant of plaintiff's corporate name.

While the defendant admits that the paint was sold as alleged, it defends on three principal grounds: the sales were authorized by plaintiff; the "clean hands" doctrine operates to bar the claim of plaintiff; there is no proof of damages upon which to base an award.

■ At trial, the principal defense witnesses, John Masters, an original defendant to whom reference has been made, and Richard Splinter, the president of Corrosion, testified that Corrosion did, in fact, sell, under the label "Urecal 807," approximately 800 gallons of a product not manufactured or sold by Urecal to contractors for the cities of Kingsport and Greeneville, Tennessee. The technical manager of Urecal, Ronald Smalzer, stated that except for a sample quantity of 20 gallons, Urecal never manufactured "807." Defendant, however, suggests that plaintiff authorized the use of "807" labels by participating in negotiations to organize a corporation to be known as Urecal of Georgia, Inc. While there is evidence that "807" labels were to be used on an "interim basis" until appropriate labels for Urecal of Georgia could be printed, insurance negotiations and the purchase of stationery marked the extent of the business activities of Urecal of Georgia. No stock was ever issued, no Board of Directors ever elected, no bank account ever opened, and no sales ever attempted. The argument that plaintiff authorized "interim use" of "807" labels is therefore unpersuasive.

■ The Urecal trademark upon which recovery is sought bears the encircled "R" symbolic of registration. Plaintiff admits that the mark has never, in fact, been registered. Under these circumstances, the "clean hands" doctrine, which precludes the grant of relief to one who himself has acted improperly, is applicable. Clearly, the doctrine reaches cases of unfair competition. *Eastman Kodak v. Fotomat Corp.*, 317 F.Supp. 304 (N.D.Ga.1969). By invoking the doctrine, the court acts to protect the consuming public from commercial dishonesty. See, e.g. *Strey v. Devines, Inc.*, 217 F.2d 187 (7th Cir. 1954). Thus, in *Holzapfels Compositions Co. v. Rahtjen's American Composition Company*, 183 U.S. 1, 22 S.Ct. 6, 46 L.Ed. 49 (1901), an action for injunction and accounting for lost profits, the Supreme Court declared that

> "A symbol or label claimed as a trademark, so constituted or worded as to make or contain a distinct assertion which is false, will not be recognized, nor can any right to its exclusive use be maintained."

183 U.S. at 8, 22 S.Ct. at 8, 46 L.Ed. at 53. There, the court refused to grant relief to the owner of a trademark bearing the word "patent," when in fact there was no patent.

*Accord, Perfection Mfg. Co. v. B. Coleman Silver's Co.*, 270 F. 576 (7th Cir. 1921). *See also Raymond v. Royal Baking-Powder Co.*, 85 F. 231 (7th Cir. 1898).

In an unfair competition action like the case at bar, where equitable and legal claims are joined, the doctrine of "clean hands," if indicated by the facts, should preclude recovery on both claims. *See, e.g. Hall v. Wright*, 240 F.2d 787 (9th Cir. 1957). Historically, of course, the doctrine was fashioned in the courts of equity. While the procedural distinction between law and equity is, by Rule 2 of the Federal Rules of Civil Procedure abolished, a substantive distinction persists for purposes of determining issues triable by jury. *Rogers v. Loether*, 467 F.2d 1110 (7th Cir. 1972). Here, the parties have not demanded trial by jury, and the reason for invoking the "clean hands" doctrine to bar an equitable claim for unfair competition applies with equal force to a claim at law for damages. As Judge Duffy once remarked,

> "[g]enerally speaking . . . it can be said that in all cases of unfair competition it is the principles of old-fashioned honesty which are controlling."

*Jewel Tea Co. v. Kraus*, 187 F.2d 278 (7th Cir. 1950). Professor Nims has observed that

> "[t]here have been many attempts to explain the bases of the rules of unfair competition of which the law of trademarks is but a part but one needs go no farther than this basic principle, i.e. that the law recognizes truth as an essential of business relations."

1 Nims, Unfair Competition and Trademarks, § 197 (4th ed. 1947). Thus, if the court is to respect this principle of truth in business relations, it may not permit the recovery of damages upon a mark that speaks falsely.

Moreover, there is insufficient evidence upon which the court might find that plaintiff suffered damage to its business reputation and profits, as alleged. While the plaintiff must prove damages by a preponderance of the evidence, the proof may be circumstantial, *Locklin v. Day-Glo Color*

*Corporation*, 429 F.2d 873 (7th Cir. 1970) "even to the point of estimates based upon assumptions, provided that the assumptions rest upon an adequate basis." *Id.* at 879. Here, it is impossible for the court even to make assumptions concerning lost profits, reduction in price of goods due to unfair competition, damage to reputation of the trademark owner's goods or business, or expenses incurred in preventing purchasers from being deceived by defendants' wrongful conduct, all of which are traditional elements of damage in an unfair competition action. *See, e.g. Obear-Nester Glass Co. v. United Drug Co.*, 149 F.2d 671 (8th Cir. 1945). While the record does disclose that the Urecal name has appeared in two trade journals, there was no testimony as to the readership of these journals, or any other evidence by which the court could evaluate the reputation of Urecal, which, in the words of one witness, was a "two-man operation" during much of its brief history. There is no evidence of the earnings of Urecal since its inception in 1967. Urecal has not demonstrated that the price of any of its products has declined as a result of the conduct of defendant. Any damage award to Urecal would, for these reasons, be conjectural, and therefore prohibited by law. *Medigroup, Inc. v. Schilknecht*, 463 F.2d 535 (7th Cir. 1972).

Defendants Masters and Corrosion have moved the court for an award of attorneys' fees on the ground that if they prevail in this equity case, they are entitled to such an award. Assuming the accuracy of this impression of the law, the "clean hands" doctrine bars any award to either. Masters prepared the false trademark during the period of his employment with Urecal, and Corrosion admits that it sold paint, not manufactured or sold by Urecal, under a Urecal label.

For the reasons expressed in this memorandum of decision, judgment will be, and is, rendered for the defendant. The motions of the defendants for attorneys' fees will be, and are, denied. Each party will bear its own costs. This memorandum of decision is intended to satisfy the provisions

of Rule 52(a) of the Federal Rules of Civil Procedure.