# HERRING-HALL-MARVIN SAFE COMPANY *v.* HALL'S SAFE COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE·SIXTH CIRCUIT.

No. 136. Argued January 30, 1908.—Decided February 24, 1908.

*Donnell* v. *Herring-Hall-Marvin Safe Co., ante,* p: 267, followed as to construction of the contract involved in that case and this, and as to the rights of stockholders to carry on business under their own name.

Although the trade-name may not be mentioned in the sale of a business taken over as a going concern, a deed conveying trade-marks, patent-rights, trade-rights, good will, property and assets of every name and nature is broad enough to include the trade-name under which the vendor corporation and its predecessors had achieved a reputation.

The name of a person or town may become so associated with a particular product that the mere attaching of that name to a similar product without more would have all the effect of a falsehood, and while the use of that name cannot be absolutely prohibited, it can be restrained except when accompanied with ·a sufficient explanation to prevent confusion with the product of the original manufacturer or original place of production.

146 Fed. Rep. 37, modified and affirmed.

THE facts are stated in the opinion.

*Mr. Lawrence Maxwell, Junior,* with whom *Mr. Charles H. Aldrich* was on the brief, for petitioner:

"Hall's Safes" was a trade-name of the old concern indicating the source of manufacture.

The safes made by the old concern were called "Hall's Safes," and advertised by that name. It was the short name for them in the trade; in other words, their trade-name. It did not denote a particular kind of safe, but the origin of manufacture. This is admitted by the answer.

The trade-name passed to the purchaser as part of the good will of the old concern. Sebastian on Trade-Marks (4th ed.), 308; *Menéndez* v. *Holt,* 128 U. S. 514; *Brown Chemical Com-*

*pany* v. *Meyer*, 139 U. S. 540, 548; *Le Page Co.* v. *Russia Cement Co.*, 51 Fed. Rep. 941, 943; *Russia Cement Co.* v. *Le Page*, 147 Massachusetts, 206.

The defendants were not entitled to appropriate the good will of the old concern by carrying on business under a corporate title substantially the same, and by calling their product "Hall's Safes." *Menendez* v. *Holt*, 128 U. S. 514, 521, 522; *Russia Cement Co.* v. *Le Page,* 147 Massachusetts, 206; *Hoxie* v. *Chaney*, 143 Massachusetts, 592; *Chas. S. Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462; *Dodge Stationery Co.* v. *Dodge et al.*, 145 California, 380; *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Mfg. Co.*, 37 Connecticut, 278; *Myers* v. *Kalamazoo Buggy Co.*, 54 Michigan, 215; *Smith* v. *Brand & Co.*, 58 Atl. Rep. (N. J.) 1029; *Trego* v. *Hunt*, App. Cas. 7; *Duryea* v. *Nat. Starch Mfg. Co.*, 79 Fed. Rep. 651; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118, discussed and distinguished from case at bar.

The injunction awarded by the Circuit Court of Appeals is inadequate on any theory of the plaintiff's rights. It does not give proper protection against infringement by the defendants of plaintiff's rights. It is not sufficiently definite and specific. *New York, New Haven & Hartford R. R. Co.* v. *Interstate Commerce Commission*, 200 U. S. 361, 404; *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169, 204; *Dodge Stationery Co.* v. *Dodge et al.*, 145 California, 380.

The cross bill was properly dismissed. The claim that the plaintiff was not entitled to a decree on its bill because it had been guilty of false representations, and that the defendant was entitled to a decree on its cross bill, is based upon the erroneous assumption that the plaintiff did not acquire the right to use the old name in connection with the business which it purchased. Good will or a trade-mark or a trade-name may not be sold by itself, but it may be transferred in connection with the sale of a plant, and it is no fraud on the public for the purchaser to use the old name or mark. *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540, 548; *Menendez* v. *Holt*, 128 U. S.

514; *Kidd* v. *Johnson,* 100 U. S. 617; *Richmond Nervine Company* v. *Richmond,* 159 U. S. 293, 302.

*Mr. Judson Harmon* and *Mr. William G. Cochran* for respondents:

The contentions of the petitioner in this case are concluded by the decision of this court in the case of *Howe Scale Company* v. *Wykcoff, Seamans & Benedict,* 198 U. S. 118. Wherever the parallel between the two cases fails, the case against the Remingtons was much stronger than the case against the Halls. The following cases are to the same effect: *National Starch Co.* v. *Duryea,* 41 C. C. A. 244; *Montreal Lithographing Co.* v. *Sabiston,* App. Cas. 610; *Knoedler* v. *Boussod,* 47 Fed. Rep. 465, 466; *Knoedler* v. *Glaenzer,* 55 Fed. Rep. 895; *Bassett* v. *Percival,* 5 Allen, 345, 347; *Lawrence* v. *Hull,* 169 Massachusetts, 250; *Marcus Ward & Co.* v. *Ward,* 40 N. Y. St. Rep. 792; *Morgan* v. *Schuyler,* 79 N. Y. 490, 494; *Williams* v. *Farrand,* 88 Michigan, 473. See also *Moreau* v. *Edwards,* 2 Tenn. Ch. 347, 349; *McGowan Bros. Pump Co.* v. *McGowan,* 22 Ohio St. 370; *Chattanooga Med. Co.* v. *Thedford,* 58 Fed. Rep. 347, 349; *Fish Bro. Wagon Co.* v. *LaBelle Wagon Works,* 82 Wisconsin, 546, 563; *Hazelton Boiler Co.* v. *Hazelton,* 142 Illinois, 495, 507, 508 (distinguishing *Frazer* v. *Frazer Lubricator Co.,* 121 Illinois, 147); *Helmbold* v. *Helmbold Mfg. Co.,* 53 How. 457, 459; *Horton Mfg. Co.* v. *Horton Mfg. Co.,* 18 Fed. Rep. 817.

In view of the absence of any express license to use the name of Hall's Safe & Lock Company, the provision, on the contrary, that the name of the new company shall be Herring-Hall-Marvin Company, the further provision for the dissolution of Hall's Safe & Lock Company, and the above authorities, Judge Clark erred in holding that the Herring-Hall-Marvin Company acquired the good will, with the right to use the trade-name, if it chose to do so, and undoubtedly with the exclusive right to manufacture and sell the trade product known to the markets of the country as the Hall's Safes, and the Circuit Court of Appeals was right in modifying the injunction and

permitting the use of the family name "Hall" in the name of the new company.

The principles for which we contend are recognized in many of the cases cited by complainant. See *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Co.*, 37 Connecticut, 295; *Trego* v. *Hunt*, App. Cas. 7.

Mr. Justice Holmes delivered the opinion of the court.

This is the suit referred to in *Donnell* v. *Herring-Hall-Marvin Safe Company, ante,* p. 267. It was brought by the petitioner against the respondents to enjoin them from carrying on their business under their present name or any name calculated to make purchasers believe that they are dealing with the establishment founded by Joseph L. Hall, or with the plaintiff, and also to enjoin them from advertising or marking their product as Hall's Safes. The facts are stated in the case referred to. In brief, the petitioner is the successor by purchase to the business of Hall's Safe and Lock Company, an Ohio corporation founded by Joseph L. Hall, a safe maker of repute, the stock of which belonged to his estate and his children. The respondents are sons of Joseph L. Hall and an Ohio corporation formed by them in September, 1896, immediately after they were discharged from their contracts with the purchasing company. It has been decided that the Halls did not give up the right to do business in their own name by the part they took when the original company sold out, and that the petitioner has the right, but not the exclusive right, to use the name Hall. Its rights arise by way of succession, out of the priority of the original company, not out of contract. This case requires us to discuss a little further what the respective rights of the parties are. The decision below is to be found in 146 Fed. Rep. 37, and 76 C. C. A. 495.

We think it clear, as was conceded in the other case, that the plaintiff got all the grantable rights of the original company, including that of using the name Hall. It is true that trade names were not mentioned in the deed, but its language

was broad enough to include them. The deed, along with the plant, patterns, stock of safes, accounts, papers, etc., conveys all "trade marks, patent rights, trade rights, good will, and all its property and assets of every name and nature," and agrees that the business is "taken over in all respects as a going concern." If a particular phrase is needed in addition to the general language and the nature of the transaction, "trade rights" will do well enough. The name Hall was used and was expected to be used as a part of the name of the first purchasing company, The Herring-Hall-Marvin Company. There was a stipulation in the deed that the seller should be wound up, but that, far from being, as was argued, a provision in favor of the seller to avoid the use of its name by the purchaser, was a covenant to the purchaser in aid of the seller's undertaking not to engage in any business thereafter. The Hall Safe and Lock Company expressly and in reiterated terms sold all its property and assets of every description as a going concern, agreed to disappear and disappeared. It had no reason for retaining any right and retained none, except the right to be paid. The circumstances of the case raise none of the nice questions that sometimes have arisen as to when the name is sold along with the other assets. It may be that, although the deed conveyed all that it could convey, the plaintiff could not use the corporate name proper of the original corporation, because that is a charter right, and could not be exercised without the consent of the legislature. *Montreal Lithographing Co.* v. *Sabiston* [1899], A. C. 610. But that is not what it wants to do. It only wants so far as it may to appropriate the name "Hall" for its safes.

The original company, from 1867 to 1892, was attaching to Hall's safes the reputation that made the name famous and desired. Whoever achieved it did so through the medium of the company. The good will thus gained belonged to the company, and was sold by it, with all its rights, when it sold out. See *Le Page Co.* v. *Russia Cement Co.*, 51 Fed. Rep. 941, 943. So that the question is narrowed to what its rights would have

been at the present day if it had kept on. The advantage which it would have had, and to which the petitioner has succeeded, is that of having been first and alone for so long in the field. Some of the Halls might have left it and set up for themselves. They might have competed with it, they might have called attention to the fact that they were the sons of the man who started the business, they might have claimed their due share, if any, of the merit in making Hall's safes what they were. *White* v. *Trowbridge*, 216 Pa. St. 11, 18, 22. But they would have been at the disadvantage that some names and phrases, otherwise truthful and natural to use, would convey to the public the notion that they were continuing the business done by the company, or that they were in some privity with the established manufacture of safes which the public already knew and liked. To convey that notion would be a fraud, and would have to be stopped. Therefore such names and phrases could be used only if so explained that they would not deceive.

The principle of the duty to explain is recognized in *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118. It is not confined to words that can be made a trade-mark in a full sense. The name of a person or a town may have become so associated with a particular product that the mere attaching of that name to a similar product without more would have all the effect of a falsehood. *Walter Baker & Co.* v. *Slack*, 130 Fed. Rep. 514. An absolute prohibition against using the name would carry trade-marks too far. Therefore the rights of the two parties have been reconciled by allowing the use, provided that an explanation is attached. *Singer Manufacturing Co.* v. *June Manufacturing Co.*, 163 U. S. 169, 200, 204; *Brinsmead* v. *Brinsmead*, 13 Times L. R. 3; *Reddaway* v. *Banham* [1896], A. C. 199, 210, 222; *American Waltham Watch Co.* v. *United States Watch Co.*, 173 Massachusetts, 85, 87; *Dodge Stationery Co.* v. *Dodge*, 145 California, 380. Of course the explanation must accompany the use, so as to give the antidote with the bane.

We must assume that the name Hall in connection with safes has acquired this kind of significance. This, or very nearly this, is alleged by the answer and must have been the finding of the courts below. It was suggested that really the value of the name was due to the use of patents that have run out. But we think it appears that the meaning of the name is not confined to the use of Hall's patents, and further, has had a particular succession of makers so associated with it that the principle of the injunction granted is right. The defendants say that they have corrected advertisements, and so forth, that might be deemed fraudulent, when called to their attention. But the name of the defendant company of itself would deceive unless explained. It may have repented but it has transgressed, and it even now asserts rights greater than we think it has. Therefore the injunction must stand.

We are not disposed to make a decree against the Halls personally. That against the company should be more specific. It should forbid the use of the name Hall, either alone or in combination, in corporate name, on safes, or in advertisements, unless accompanied by information that the defendant is not the original Hall's Safe and Lock Company or its successor, or, as the case may be, that the article is not the product of the last named company or its successors. With such explanations the defendants may use the Hall's name, and if it likes may show that they are sons of the first Hall and brought up in their business by him, and otherwise may state the facts.

There is a cross bill seeking to prevent the plaintiff from making use of the names Hall's Safe and Lock Company, Hall's Safe, &c., but it does not need separate consideration. The defendant shows nothing of which it can complain or which should bar the plaintiff from its relief. The portion of the decree dismissing the cross bill is affirmed.

*Decree modified and affirmed.*