SANFORD-DAY IRON WORKS *v.* ENTERPRISE FOUNDRY & MACHINE WORKS *et al.* *

(*Knoxville.* September Term, 1914.)

1. CERTIORARI. Petition. Stating case.

The petition for *certiorari* satisfies the rules of the supreme court, as to stating the case, where it adopts, as a part of it, a brief prepared for such court fully stating the case. (*Post, pp.* 671-676.)

2. TRADE-MARKS AND TRADE-NAMES. Succession.

The right to use the names "Whitney," "Whitney Car Wheel Works," and "A. Whitney & Sons" was not disposed of when the Whitneys suspended business, the assets and business of the concern not passing to any one person, but there being merely a passing to various persons of considerable of the assets thereof under levy thereon. (*Post, pp.* 676-678.)

Case cited and approved: Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill., 494.

3. TRADE-MARKS AND TRADE-NAMES. Expiration of patent. Right to use manufacturer's name.

Where the Whitneys, manufacturing a car wheel under the Faught patent, designated and sold it as the Faught wheel, and not as the Whitney wheel, the public did not, on expiration of the patent, acquire the right to use the name "Whitney" in manufacture of the wheel. (*Post, pp.* 678, 680.)

Cases cited and approved: Singer Mfg. Co. v. June Mfg. Co., 163 U. S., 169; Holzapfel's Compositions Co. v. Am. Com. Co., 183 U. S., 1; Simmons Medicine Co. v. Mansfield Drug Co., 93 Tenn., 84; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S., 537.

4. TRADE-MARKS AND TRADE-NAMES. Acquisition. Production.

The product of A. Whitney & Sons and Whitney Car Wheel Works having for half a century been known to the trade as Whitney

*For the limitation of the right to use one's own name as a tradename, see notes in 1 L. R. A. (N. S.), 660 and 28 L. R. A. (N. S.), 934.

wheels, indicating the source of their manufacture, they and
their successors acquired a right to use the name "Whitney"
in advertising car wheels, which will be protected from unfair
infringement.  (*Post, pp.* 680, 681.)

**5. ESTOPPEL.   Acts for consideration.**

One who, for a consideration, signs a contract by which another
assigns right to use trade names, and likewise one claiming
under him, is estopped to question the title of the assignor and
assignee.  (*Post, pp.* 681, 682.)

Cases cited and approved:   Anderson v. Akard, 83 Tenn., 182;
Berrigan v. Fleming, 70 Tenn., 271; Friedenwald v. Mullan, 57
Tenn., 226; Fort v. Coker, 58 Tenn., 579.

**6. TRADE-MARKS AND TRADE-NAMES.   Family name.   Right
of employer.**

As against a manufacturer of car wheels, having the right to
designate them as "Whitney" wheels, a rival manufacturer,
merely because employing Asa W. Whitney, who never manu-
factured such wheels, but was merely an employee and relative
of manufacturers thereof, has no right to advertise its wheels
as the "Whitney" or the "Asa W. Whitney" wheels, but merely
the fact of its employment of such person, and facts in relation
to him.  (*Post, pp.* 682-693.)

Cases cited and approved:   Holloway v. Holloway, 13 Beav., 209;
Burgess v. Burgess, De G. M. & G. Co., 896-903; Brown Chemical
Co. v. Meyer, 139 U. S., 540; Meneely v. Meneely, 62 N. Y., 427;
Robinson v. Storm, 103 Tenn., 40; Donnell v. Safe Co., 208 U. S.,
267; Safe Co. v. Hall's Safe Co., 208 U. S., 554; Aetna Mill &
Elevator Co. v. Kramer Milling Co., 28 L. R. A., 934; Stone-
braker v. Stonebraker, 33 Md., 252; Morton v. Morton, 1 L. R. A.
(N. S.), 660; Tussaud v. Tussaud, 44 Ch. Div., 678; Burrow v.
Marceau, 124 App. Div., 665.

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HAL. H. HAYNES, Judge.

SHIELDS & CATES and HARR & BURROW, for plaintiff.

C. J. ST. JOHN and POWELL, PRICE & SHELTON for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed to restrain defendant Enterprise Foundry & Machine Works from unfair competition in the use of the name ''Whitney'' as applied to car wheels manufactured by it.   Complainant, Sanford-Day Iron Works, claimed the right to the use of this name in connection with such wheels, and sought the protection of this right by its bill.

Proof was taken, and the chancellor rendered a decree enjoining defendant Enterprise Foundry & Machine Works from using the name ''Whitney,'' except in a certain manner set out in the decree.   The court of civil appeals reversed the chancellor's decree and dismissed the bill.

A petition for *certiorari* was filed which has been granted, and the case has been heard in this court.

Criticism is made as to the form of the petition for *certiorari,* and a motion to dismiss is filed because it is said the petition does not sufficiently state the case.

The petition is, indeed, quite meager, but is attached to a brief, and the brief made part thereof, and the brief contains a full statement of the case. By adopting the brief as a part of the petition, we think the petitioner has sufficiently complied with the rules of this court as to petitions for *certiorari*. This practice, while it may sometimes cause inconvenience to the court, nevertheless complies with the statute, and we have so far adopted no rule against it. The brief referred to and adopted in the petition was an original brief made for this court, attached to the petition, and filed therewith.

In 1847, A. Whitney, of Philadelphia, began the manufacture of car wheels. Under the name of "A. Whitney & Sons" and the "Whitney Car Wheels Company" this business was continued until 1896. After the death of the original A. Whitney the foundry was operated by his sons. Asa W. Whitney, a grandson of the original A. Whitney, was employed by this concern for a good many years prior to 1896, when its business ceased. The said Asa W. Whitney is now in the employ of defendant Enterprise Foundry & Machine Works, as will be hereafter noted.

In 1903 the complainant, Sanford-Day Iron Works, operating a foundry at Knoxville, desiring to go into the business of manufacturing car wheels, and to obtain the services of some one familiar with that business, got into correspondence with Asa W. Whitney. The correspondence resulted in Asa W. Whitney coming to Knoxville, and the complainant began the man-

ufacture of car wheels, or mining car wheels, under his supervision. The first employment of Asa W. Whitney by complainant was temporary.

It seems that the Whitney concerns at Philadelphia, heretofore referred to, had manufactured a very superior wheel, and their product enjoyed a valuable reputation in the trade. Mr. Sanford, the president of complainant company, learned from Asa W. Whitney that the original Whitney concern had suspended business, and negotiations were had between Sanford and Asa W. Whitney, the precise details of which are now in dispute. It resulted that complainant company took up the matter with James S. Whitney, of Pennsylvania, who was represented to be entitled to the good will of the old Whitney foundry, and to the use of the name "Whitney," in connection with car wheels, and entered into a contract with the said James S. Whitney for this good will and the use of this trade name. James S. Whitney was the father of Asa W. Whitney.

This agreement was executed on the 22d day of March, 1904, and under its terms the Sanford-Day Iron Works acquired the good will of "Whitney Car Wheel Works" and "A. Whitney & Sons," and the right to the exclusive use of the names "Whitney Car Wheel Works," "A. Whitney & Sons," and "Whitney," in connection with the foundry or car wheel business. It was also provided in this contract that complainant company should employ Asa W. Whitney to supervise the manufacture of wheels, and to do other things in its

130 Tenn. 43

plant, at a designated compensation, for a period of five years. By the terms of the contract, complainant company acquired certain equipment belonging to the old Whitney concern, a lump sum of money was paid and agreed to be paid to James S. Whitney, and a stipulated royalty, and it was further agreed that complainant company might within five years from the date of this contract discontinue the royalty, and, upon the payment of an additional amount in stock of the company, acquire the good will of the Whitney business and the right to use in perpetuity the Whitney name in connection with its wheel business. The contract contained other details not necessary to be here enumerated. It is to be noticed that it was a tripartite contract, signed by James S. Whitney, Asa W. Whitney and Sanford-Day Iron Works.

Pursuant to this contract, the complainant company gave employment to Asa W. Whitney for five years, and within the five-year term exercised its option and purchased from James S. Whitney and his wife, who had meanwhile become his assignee, the good will of the old Whitney business, and the perpetual right to the use of the names "A. Whitney & Sons," "Whitney Car Wheel Works," and "Whitney."

Asa W. Whitney was not a party to this second contract. At the expiration of the five years for which he was employed under the first contract, his connection with complainant company was severed, and very shortly thereafter he went into the service of defendant Enterprise Foundry & Machine Works.

After negotiating the first contract with the Whitneys, the complainant company entered extensively into the manufacture of mining car wheels. It advertised that it was the successor to the old Whitney concern, that Asa W. Whitney was in its employ, and it advertised its wheels as the Whitney wheels. Complainant has spent considerable sums of money in developing and advertising its car wheel business, using the name "Whitney" in connection therewith as a trade name, and has built up quite a large and profitable custom in these wheels.

After Asa W. Whitney left complainant he got in touch with the Enterprise Foundry & Machine Works, and was employed by it. Mr. Daniel, the president of the latter company, testifies that his company was operating a foundry business at Bristol; that the business had undergone some vicissitudes; and that it was thought desirable to enlarge it. He had talked with Mr. Sanford, and perhaps others, and had understood that the manufacture of mining car wheels was profitable, and it was decided that defendant company would add that feature to its business. Accordingly, after the services of Asa W. Whitney were secured by defendant company, the connection of the latter with said company was extensively advertised, the said company began the manufacture of wheels under the supervision of Asa W. Whitney, and pushed the market of these wheels with a great deal of energy.

Defendant company advertised said wheels which it manufactured as "A. W. Whitney's self-oiling mining

car wheels;" it advertised that its wheels were of Whitney quality. On certain of its advertisements in bold type appeared the legend, "Whitney means a certainty." One of its agents in Birmingham advertised that he handled "Whitney wheels," and in its correspondence and catalogues, and in various other ways, defendant company made use of the word "Whitney" in an effort to promote the sale of its wheels.

It is fair to say that defendant company in certain of its correspondence conceded the right of complainant company to call its wheels "Whitney wheels," and defendant company referred to its wheels when formally characterizing them as "A. W. Whitney wheels." However, defendant did make use of the name "Whitney," and the name "Whitney" appeared, in divers ways, in its advertisements and correspondence in connection with its car wheel business.

Two principal questions are presented on this record. The first involves the right of complainant company to the use of the name "Whitney." Conceding this right, the second question presented is whether the defendant company has, under the circumstances above detailed, illegally invaded complainant's right.

It is urged on behalf of the defendant that complainant has no legal claim to protection in the use of this trade name; that it never acquired any right to the name; that James S. Whitney had no such right to convey.

The testimony of Asa W. Whitney shows that the Whitney concerns, heretofore referred to, have man-

ufactured car wheels for a great number of years, and that said wheels have been of high reputation. An employee of the Whitney Company named Faught procured a patent on a particular type of wheel, and for many years this was the principal wheel manufactured by the Whitneys. Asa W. Whitney says that this wheel was called the Faught wheel, but it was made by the Whitneys until that concern suspended in 1896.

When the Whitney Car Wheel Works went out of business in 1896, considerable of the assets were levied on and distributed among various parties. Mr. Faught, who owned the patent on his wheel, went to the Lobdell Car Wheel Works, of Wilmington, Delaware, and the Lobdell people began the manufacture of wheels under the Faught patent. Asa W. Whitney, however, says that the Lobdell concern did not designate its wheel as the Whitney wheel, but sold it as the Faught wheel, and it otherwise appears in the record that the Lobdell house has never claimed any right to the Whitney name, or made any use of said name in connection with its business.

Other assets of the Whitney Car Wheel Works in 1896 passed to other parties. The assets and business of this concern, as a whole, did not pass to any one person. There was no such sale or transfer of this business as to carry its good will or the right to use its name, nor does it appear that the Lobdell Company, who acquired the Faught wheel patent, has ever claimed the right to use the Whitney name.

We therefore conclude that the right to the use of the names "Whitney," "Whitney Car Wheel Works," and "A. Whitney & Sons" was not disposed of when the Whitneys suspended business.

The presumption is that no one intends to part with the right to use his own name, and such a right does not ordinarily pass by a sale of one's business in the absence of stipulation. The right certainly would not pass under a judicial sale where the business was distributed among different purchasers. *Hazelton Boiler Co.* v. *Hazelton Tripod Boiler Co.,* 142 Ill., 494, 30 N. E., 339; 20 Cyc., 1277-1279.

We find no justification in the record for the claim of defendant company that the name "Whitney" was inseparably associated with the Faught wheel patent as a descriptive name. We therefore cannot sustain the contention that, when the Faught patent expired, the name "Whitney," along with the patent, fell into the public domain and became subject to the use of any one.

The Faught wheel was patented under that name. "Faught" was the descriptive word or generic name of that patent used to indicate the nature of the wheel. So far as this record shows, there has never been any dedication of the name "Whitney" by its application to a patented article. There can be no contention, therefore, that the right to use the name "Whitney" has fallen into the domain of things public, along with the expiration of some patent so designated. *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S., 169, 16 Sup. Ct., 1002,

41 L. Ed., 119, *Holzapfel's Compositions Co.* v. *Rahtjen's American Composition Co.*, 183 U. S., 1, 22 Sup., Ct., 6, 46 L. Ed., 49, and like cases accordingly have little application to the facts of this case.

This suit does not concern a patented article, and it is not a trade-mark case, but it is a case involving unfair competition in business. The grounds upon which rest the law of specific trade-mark and of unfair competition in business and the distinctions are stated by this court in the case of *Simmons Medicine Co.* v. *Mansfield Drug Co.*, 93 Tenn., 84, 23 S. W., 165. See, also, *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S., 537, 11 Sup. Ct., 396, 34 L. Ed., 998. Even in the case of a patented article where one's name has become the generic name of that article, when the patent has expired, another using that name will be required, under the law of unfair competition, to adopt such precautions as will protect the property of others and avoid a fraud upon the public. *Singer Mfg. Co.* v. *June Mfg. Co.*, supra.

It is not shown that other manufacturers who, since the expiration of the Faught patent, have made that type of wheel, with the exception of complainant, have ever advertised these wheels as Whitney wheels, or asserted a right to use the name Whitney in connection with the market of said wheels, until defendant company made such an attempt.

It appears from the testimony of Asa W. Whitney that his father and associates did not abandon the idea of resuming business when they were closed out in

1896. They attempted to reorganize, and as late as 1903, when Asa W. Whitney was first employed by the Sanford-Day Iron Works. He testifies that "We," presumably referring to his people, were thinking of opening a business in New Jersey, and for this reason he told Mr. Sanford that he would not be interested in securing employment with the latter, except on a long-time contract. At the time complainant company and James S. Whitney made their first contract, the latter still had a quantity of the old Whitney equipment, which complainant purchased.

So far, then, as this record shows, James S. Whitney, who, according to the testimony of Asa W. Whitney, had succeeded to the good will of A. Whitney & Sons and Whitney Car Wheel Works, had the right to dispose of these trade names when he first contracted with complainant company in 1904. Asa W. Whitney concedes that his father had the right to assign the use of the names "Whitney Car Wheel Works" and "A. Whitney & Sons," but insists that he did not have the right to dispose of the name "Whitney." We must reach a different conclusion. Inasmuch as the product of A. Whitney & Sons and Whitney Car Wheel Works had been known to the trade for half a century as Whitney wheels, indicating the source of their manufacture, we think that those concerns and their successors had acquired a right to employ the name "Whitney" in advertising car wheels—such a right as the courts should protect from unfair infringement.

Iron Works v. Machine Co.

Since the right to use the name "Whitney" had not been abandoned by the original Whitneys, the said name was not subject to appropriation by defendant company. A valid sale of this trade name was made to complainant, and the only right that defendant company can have to the use of the name is such a right as it acquired by reason of its contract with Asa W. Whitney.

In so far as Asa W. Whitney and his privies are concerned, it might be sufficient to say they are estopped from asserting that James S. Whitney did not have the right to assign the Whitney trade names, and estopped from questioning the title of James S. Whitney's grantee. Asa W. Whitney, as we have heretofore noted, signed the contract by which these tradenames were transferred to the Sanford-Day Iron Works for five years, and under which it was agreed to thereafter transfer the right to the use of these names in perpetuity on certain considerations. For his signature to this instrument he received a valuable consideration. He was employed by the Sanford-Day Iron Works as a part of this trade for a period of five years, at a salary and royalty therein named. It was represented by this first contract that James S. Whitney had a right to assign these names, and he afterwards did so. Under well-settled principles of law, neither Asa W. Whitney, nor those claiming under him, can now question the right of complainant company to the use of such names. *Anderson* v. *Akard,* 15 Lea,

182; *Berrigan* v. *Fleming,* 2 Lea, 271; *Friedenwald* v. *Mullan,* 10 Heisk., 226; *Fort* v. *Coker,* 11 Heisk., 579.

We will waive the question of estoppel, however, and further consider the nature of the right of the Enterprise Foundry & Machine Works to the use of the Whitney name under its contract with Asa W. Whitney. The latter testifies that he has no stock or interest in the defendant company; that he is a mere employee, to be paid a salary and a percentage of the profits. In other words, the defendant company is not an enterprise of Asa W. Whitney's. It is not his property, and the business is not his. It is not he that is here asserting the right to the use of the name "Whitney" in connection with the advertisement and sale of car wheels. This is not a case, therefore, involving the right of a person to use his own name in his own business.

It has been stated as a general proposition of law that every man has the right to use his own name in his own business, even though some one else of the same name has previously been engaged in a similar business under that name. *Holloway* v. *Holloway,* 13 Beav., 209; *Burgess* v. *Burgess,* De G. M. & G., 896-903; *Brown Chemical Co.* v. *Meyer,* 139 U. S., 540, 11 Sup. Ct., 625, 35 L. Ed., 247; *Meneely* v. *Meneely,* 62 N. Y., 427, 20 Am. Rep., 489; *Robinson* v. *Storm,* 103 Tenn., 40, 52 S. W., 880. It is held in one of these cases, under such circumstances, that a man running his own business in his own name can neither be com-

pelled to discontinue, nor be forced to operate in the name of some one else. *Meneely* v. *Meneely*, supra.

This rule, however, has been much qualified, and recent cases, while conceding its general application, are uniform to the effect that one's own name must not be used as an artifice to mislead the public as to the identity of the business or corporation, or the article produced. The business of another who first lawfully selected this trade name and produced an article which is identified by such name cannot be thus unfairly diverted. This court has so held in the well-considered case of *Robinson* v. *Storm*, supra. The Supreme Court of the United States has frequently so held. *Donnell* v. *Herring-Hall-Marvin Safe Co. et al.*, 208 U. S., 267, 28 Sup. Ct., 288, 52 L. Ed., 481; *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.*, 208 U. S., 554, 28 Sup. Ct., 350, 52 L. Ed., 616; *Brown Chemical Co.* v. *Meyer*, 139 U. S., 540, 11 Sup. Ct., 625, 35 L. Ed., 247, and other cases reviewed in these cited. The State courts are uniformly in accord. See note to *Morton* v. *Morton,* as reported in 1 L. R. A. (N. S.), 660, and note to *Aetna Mill & Elevator Co.* v. *Kramer Milling Co.,* as reported in 28 L. R. A. (N. S.), 934.

The application of the rules of law respecting the right of one to use his own name in his own business is in some cases difficult. We are, however, confronted with no such difficulty here. Asa W. Whitney is not attempting to do business for himself under his own name. No effort is being made to force Asa W. Whitney to abandon the use of his own name. His right to

the use of his family name is not in dispute. The right of another and different party—to wit, the Enterprise Foundry & Machine Works—to the use of this name is involved.

It should be here stated that Asa W. Whitney has never at any time been in business for himself. He has never manufactured any car wheels or owned or operated a car wheel business. He was an employee of the old Whitney establishment, and appears to be a gentleman of much learning in metallurgy and skill in compounding iron mixtures. He has always worked as a metallurgist, and has never been the owner of, or interested in, any manufacturing business. No car wheels have ever been manufactured or marketed by him. No establishment that he ever owned or conducted has ever acquired any reputation for its product.

It seems from the testimony of Mr. Daniel that he knew of the high reputation Whitney wheels enjoyed when he employed Asa W. Whitney.

Asa W. Whitney, at the expiration of his contract with the Sanford-Day Iron Works, had a right to obtain employment from any one he chose. His knowledge of metallurgy and his skill in the composition of metals were assets of which he was entitled to the benefit. The Enterprise Foundry & Machine Works had a right to secure the services of Asa W. Whitney, and had a right to manufacture car wheels. The defendant company, however, had no right, merely by the reason of its employment of Asa W. Whitney, to pirate the trade name "Whitney," the reputation of which

---

---

had been established by others, and the right to the use of which was owned by others, and had been, by these others, sold and transferred for $8,000 to the complainant herein.

The cases considering this particular phase of the law of trade are not numerous, but they are uniform.

In 1802, a Madam Tussaud founded a wax-works establishment in London which was known as "Tussaud's." This business was carried on under said name for many years, and was operated by one Tussaud in 1890. In that year another waxworks exhibition was opened under the name of "Louis Tussaud, Limited;" one Louis Tussaud having been employed to run it or assist in running it by the owner, a company. The Tussaud who owned the original establishment brought suit. It appeared that the circulars of the new place stated that it had no connection with the plaintiff. Louis Tussaud, prior to the opening of his exhibition referred to, had never carried on any such business on his own account, nor had he ever modeled any figures for his own use. The court held that the name "Tussaud" was well known and of high reputation in connection with waxworks, and visitors who had heard of the plaintiff's exhibition would likely be misled into going to see the defendant's exhibition. The question was whether or not the company operating Louis Tussaud, Limited, and Louis Tussaud, who was an employee of that company, could be restrained for the use of the name "Tussaud" in this connection. The court said, per Sterling, J.:

"I conceive it to be clear that the defendant could not, either for valuable consideration or otherwise, confer on another person the right to the use of the name 'Tussaud' in connection with the business which the defendant had never carried on, and in which the defendant had no interest whatever. Then comes the question: Can he confer that right on a person or a company toward whom he stands simply in the position of a paid servant? He could, no doubt, confer the right of saying that the business is under his management, but could he go to the same private individual and say to him: 'I will become your servant as manager and modeler for several years, and you shall carry on the business (which is not to be mine, but yours) under my name.' I think not." *Tussaud v. Tussaud*, 44 Ch. Div., 678.

In a Maryland case it appeared that the complainant, Henry Stonebraker, had long manufactured various medicines and preparations that were widely known as "Stonebraker's" medicines and preparations. Defendants subsequently employed Abraham S. Stonebraker, a doctor and brother of complainant, in the manufacture of similar preparations which closely resembled those of complainant, and were sold as "Dr. Stonebraker's" medicines and preparations. Wrappers and general get-up were imitated in various ways, and circumstances clearly indicated fraudulent intention. Abraham S. Stonebraker had for a short time only, some years before, manufactured some drugs and remedies to which he applied his name. It was

Iron Works v. Machine Co.

held that defendants were not so entitled to use the name, and an injunction was granted. *Stonebraker* v. *Stonebraker*, 33 Md., 252.

In a New York case these facts were developed:

Napoleon Sarony was a successful New York photographer prior to November 9, 1896, when he died. October 7, 1898, Otto Sarony, his executor, sold to plaintiff's assignor Sarony's business with the trademark "Sarony" and the good-will of the business. Later this executor agreed with Marceau to use his (Otto Sarony's) name, or any part of it. Marceau then organized the Otto Sarony Company, photographers, a New York corporation in which Otto Sarony owned one share of stock—the consideration for his giving the concern the right to use his name. Held:

"The object of this transaction is perfectly apparent. It was not an attempt of a man to transact business in his own name, or transfer to another the good will of an established business. Otto Sarony did not intend to go into business using his own name. . . . The only object he (Marceau) could have was thus to secure some of the business of the plaintiff. . . . 'Sarony' meant nothing except so far as it represented the reputation or skill and artistic merit of the business transacted under that name. It was a fraud if the defendant represented that this company was either the successor of the business and methods established by Napoleon Sarony, or that any member of the Sarony family had any connection with it. It was a fraud upon the plaintiff, in that by the use of the

name 'Sarony' it indicated that the Sarony, who had established the business known to the public as Sarony's photographic establishment, was connected with it, and it was a fraud for Otto Sarony to make such an agreement with the defendant Marceau when he had transferred the right to use the name of 'Sarony' with the business established by Napoleon Sarony, and had received consideration therefor." *Burrow* v. *Marceau,* 124 App. Div., 665, 109 N. Y. Supp., 105.

A just rule fairly deducible from the foregoing cases is, where a particular name by its owner's efforts has acquired value in trade, another of that name, who has never conducted a like business for himself, will not be allowed to endow a third person with the right to use this common name in a business belonging exclusively to the latter. Viewed from every angle, such an effort to transfer a well-known name is manifestly fraudulent. It works to the injury of the person who has first used the name in business. The person who undertakes so to transfer the name seeks thus to dispose of a reputation and good will that are not his. The transferee may be likened to a receiver of stolen goods.

Mr. Nims in his work on Unfair Business Competition, has thus stated the rule:

"A person who bears the same family name as some one who is running the business under the common surname will not be allowed to sell or transfer the right to use the name to a third person who has no interest in it when the vendor has never carried on

the business in which the third person is engaged.
. . . Nor can he hire himself to another and stipu-
late that the other shall carry on the business in the
employee's name, when such a transaction would cause
confusion with the business of another.  To transfer to
a third person the right to use one's surname when
one knows there already exists business names con-
taining that surname which will be injured by the use
of his name in the same line of business is a fraud, if
the vendor knew of the use to be made of the name at
the time of the sale."  Nims on Unfair Business Com-
petition, sec. 74.

While, as heretofore stated, this record indicates
that Asa W. Whitney is a man of much learning in
metallurgy and skill in compounding mixtures of ore,
it does not indicate that he is a practical business man,
and it definitely appears that he has never been en-
gaged in business for himself; certainly not in the
manufacture of car wheels.

No wheels of his manufacture ever acquired any
reputation in the market, for he never made any
wheels.  The reputation of the Whitney wheels has
been acquired during their production by his grand-
father, his father, and the Sanford-Day Iron Works.
This reputation, this good will, this trade-name "Whit-
ney" was therefore never the property of Asa W.
Whitney, and he had no right to undertake to trans-
fer it.

The defendant company knew that Asa W. Whitney
had never manufactured any wheels, and knew that he

130 Tenn. 44

had never established any reputation for any wheel that he had put on the market. In its use of the name "Whitney," therefore, in connection with car wheels which it turns out, defendant company is not seeking to avail itself primarily of Asa W. Whitney's reputation, but is obviously endeavoring to hold out its goods as possessing a reputation and standing which belonged to the goods of A. Whitney & Sons, Whitney Car Wheel Works, and later Sanford-Day Iron Works.

It is urged that defendant company has never tried to pass off its goods as those of complainant. To this we cannot at all agree. True, defendant company has stamped its own name on its wheels, but these wheels are not generally sold by inspection of the articles themselves, but by advertisements, catalogues, etc. The name "Whitney," has been so long identified with wheels made by complainant and its predecessors as to indicate their goods alone. When defendant company, in printed literature, by which it offers and advertises its products, adroitly uses the name "Whitney" in connection with its wheels, it is inevitable that the public, who have for so many years known the wheels of complainant and its predecessors under that name, will be misled, and defendant company will gain trade at complainant's expense.

"The trade name for the goods of a particular trader may not be used by another as the trade name for his similar rival goods." 38 Cyc., 771, and cases under note 6.

The defendant company cannot be allowed thus to appropriate for its goods the reputation and standing indicated by the name "Whitney." This good will is the property of complainant, and the property in the good will is the thing protected in cases of unfair competition. 38 Cyc., 766.

Such reputation and standing never did belong to Asa W. Whitney, for he was never a manufacturer.

If the defendant company had merely wished to advertise to the trade that it had secured the services of Asa W. Whitney to superintend the making of its car wheels, and to call the attention of the public to the skill and experience of Asa W. Whitney in this line of business, it might have done these things without adopting all the varied and artful uses of the name "Whitney" in connection with the market of its wheels that appear to have been employed.

We think that the complainant is entitled to an injunction in this case. The defendant company has no right certainly to advertise its products as Whitney wheels. Asa W. Whitney has no interest in defendant's business himself, and "Asa W. Whitney wheels" are quite likely to be confused with "Whitney wheels" or "A. Whitney & Sons wheels" in the minds of purchasers. Similarity, not identity, is the test that determines the unfair use of trade names. "It is sufficient that it is a simulation likely to deceive an incautious . . . purchaser." *Robinson* v. *Storm,* 103 Tenn., 40, 48, 52 S. W., 880, 882, and authorities cited.

So, without considering separately the various assignments of error interposed to the decree of the court of civil appeals, we are of opinion that this decree should be reversed, and that the decree of the chancellor, somewhat extended in its provisions, should be affirmed.

An injunction will issue restraining defendant the Enterprise Foundry & Machine Works from advertising its wheels as "Whitney wheels" or "Asa W. Whitney wheels" or "A. Whitney wheels." It will also be restrained from the use of the name "Whitney," either alone or in connection with other words or initials, in the sale or advertising of its wheels, except that it may state that it has secured the services of Asa W. Whitney, his duties and the nature of his employment in its concern; it may advertise his knowledge, skill and experience in metallurgy and in compounding ores; it may show that Asa W. Whitney is a member of the Whitney family, brought up in business by the original makers of the Whitney wheel; and, as Mr. Justice Holmes puts it in *Herring-Hall-Marvin Safe Co.* v. *Hall Safe Co.*, 208 U. S., 554, 28 Sup. Ct., 350, 52 L. Ed., 617, it "otherwise may state the facts."

A different use of the name "Whitney," either alone, or in connection with other words or initials, by defendant, is misleading, will cause confusion and moreover, would be a misstatement, generally speaking, of the facts, to the injury of complainant.

Let a decree be entered in accordance with this opinion, and the costs of this cause taxed to defendant Enterprise Foundry & Machine Works.

This record does not develop a case in which damages could be definitely ascertained, and that question will not be considered here. We do not, however, mean to prejudice the right of complainant company to put forward its claim for damages hereafter, if such a claim can be properly set up.