J. F. ROWLEY CO. et al. v. ROWLEY.

ROWLEY v. J. F. ROWLEY CO. et al.

Circuit Court of Appeals, Third Circuit.
February 15, 1927.

Rehearing Denied March 30, 1927.

Nos. 3507, 3508.

1. **Trade-marks and trade-names and unfair competition ☞40—Sale of goods, good will, and local right to use name for 10 years held not transfer of right thereafter.**

Maker of artificial legs, by selling certain goods and chattels, together with good will of business in certain described territory, and by agreeing to allow buyer use of trade-name and right to sell on royalty basis for 10 years, did not lose exclusive right to name or establish business location after expiration of term.

2. **Trade-marks and trade-names and unfair competition ☞73(1)—Plaintiff held properly enjoined from use of brother's trade-name after expiration of period in which he was authorized to use it.**

Plaintiff, who acquired right to use trade-name of brother, who was maker of artificial legs, for 10 years, *held* properly enjoined at expiration of period from using name in manufacturing and selling legs, in business location, or in connection with telephone service.

3. **Trade-marks and trade-names and unfair competition ☞40—Plaintiff held not entitled to receive mail addressed to brother's company after expiration of period in which he used brother's trade-name, except at his address.**

Plaintiff, who acquired right to use trade-name of brother, who was maker of artificial legs, for 10 years, *held* properly enjoined at expiration of period from receiving mail addressed to brother's company, unless addressed to his business location, and he may retain inclosures from his customers of date prior to expiration of period.

4. **Trade-marks and trade-names and unfair competition ☞40—Plaintiff may be enjoined from using brother's letter heads and catalogues after expiration of period in which he was authorized to use brother's trade-name.**

Plaintiff, who acquired right to use trade-name of brother, who was maker of artificial legs, for 10 years, *held* properly enjoined at expiration of period from using brother's letter heads and catalogues.

5. **Trade-marks and trade-names and unfair competition ☞68—Plaintiff, after expiration of right to use trade-name of brother manufacturing artificial legs, may be enjoined from falsely representing his product as one receiving prize at exposition.**

Plaintiff, who acquired right to use trade-name of brother, who made artificial legs, for 10 years, *held* properly enjoined at expiration of period from representing that he was manufacturer of artificial limbs awarded gold medal at International Exposition of Artificial Limbs in London in 1915.

6. **Trade-marks and trade-names and unfair competition ☞40—After period in which plaintiff could use brother's trade-name expired, he must stamp his product as distinct from brother's.**

One who acquired right to use trade-name of brother, who was maker of artificial legs, for 10 years, must stamp his product at expiration of term with formula "distinct from and having no connection whatever with" brother's company.

7. **Trade-marks and trade-names and unfair competition ☞40—Plaintiff may make artificial legs in imitation of those manufactured by brother after right to use brother's trade-name expired.**

Plaintiff, who acquired right to use trade-name of brother, who was maker of artificial legs, for 10 years, should not be restrained at expiration of period from making leg in imitation of that made by brother, since all artificial legs are imitations of human leg, and therefore imitations of each other.

8. **Trade-marks and trade-names and unfair competition ☞73(1)—Plaintiff may use his name in manufacturing artificial legs after right to use brother's trade-name expired.**

Plaintiff, who acquired right to use trade-name of brother, who was maker of artificial legs, for 10 years, will not be enjoined from using his own name in manufacture and sale of artificial legs after expiration of period.

9. **Trade-marks and trade-names and unfair competition ☞40—Plaintiff cannot sell goods as those of brother's company after period in which he sold brother's product expired.**

Plaintiff, who acquired right to sell artificial legs manufactured by brother for 10 years, *held* properly enjoined at expiration of period from selling or offering for sale any artificial legs as goods made and sold by brother.

10. **Trade-marks and trade-names and unfair competition ☞98—Plaintiff held not required to account for profits during period of unfair competition, after expiration of right to use brother's trade-name.**

Where plaintiff sold artificial legs in unfair competition with brother, after expiration of period in which he had right to use brother's trade-name and sell brother's product, he will not be required to account for profits and damages during such period, in view of impossibility in determining portion attributable solely to wrongful use of name.

11. **Courts ☞351½—Court, having retained jurisdiction, may grant plaintiff affirmative relief after formally dismissing bill.**

Court has jurisdiction to grant plaintiff affirmative relief after formally dismissing his bill of complaint, where it retained jurisdiction to grant such relief.

Appeal from the District Court of the United States for the Western District of

Pennsylvania; Frederic P. Schoonmaker, Judge.

See, also, 18 F.(2d) 704.

Thomas M. Benner, Cornelius D. Scully, and Harold K. Brooks, all of Pittsburgh, Pa., for J. F. Rowley Co. and J. F. Rowley.

H. F. Stambaugh, Owen S. Cecil, and Watson & Freeman, all of Pittsburgh, Pa., for Albert T. Rowley.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge. These cross-appeals are from one of several decrees made from time to time by the District Court of the United States for the Western District of Pennsylvania in its attempts to adjust the business difficulties of the Rowley family arising out of a common desire of its members to engage in like businesses under the same name. A recital and discussion of all their doings would result in an opinion as long—and as confusing—as the litigation itself. Therefore, after a necessary preface, we shall review the decree paragraph by paragraph, rather than follow the many assignments of error, with the object of briefly and definitely indicating to the trial court wherein we think its decree should be affirmed, modified or reversed.

About fifty years ago J. F. Rowley engaged in the manufacture and sale of artificial legs. He built up a large business and acquired a valuable good will for his product. In 1904, J. F. Rowley, through the J. F. Rowley Company under whose name he was doing business, made the mistake of sending his brother, E. H. Rowley, to open an agency in Pittsburgh. Trouble followed, the agency was terminated, and E. H. Rowley embarked in the artificial leg business for himself, describing his product as the "Rowley" leg on a claim that he had as much right to give his name to it as his brother had to apply his name to his product. The names being the same yet the products being different, the J. F. Rowley Company, in 1907, instituted suit against E. H. Rowley in the District Court to enjoin him from using the name Rowley on his product. The trial court, believing that "nothing short of a total prohibition of the name Rowley in connection with the manufacture and sale of artificial limbs will grant to the complainant that complete

protection and preservation of its property in its trade-name and good will to which it is entitled under the law," granted an injunction. 154 F. 744. On appeal, this court, while it approved the trend of the trial court's action, thought it had gone too far and, though alive to the difficulty, remanded the case to that court to find a way or develop a formula by which the rights of both parties—the right of the plaintiff to keep its product from confusion with that of the defendant and the right of the defendant to do business under his own name—should be reconciled and preserved. In obedience to its mandate, the District Court, on May 17, 1912—preceded by contempt proceedings and heated arguments—entered a decree that if E. H. Rowley should sell artificial legs bearing his name he must stamp on them the following explanation: "Distinct from and having no connection whatever with the J. F. Rowley Company."

Peace prevailed until February 13, 1915, when J. F. Rowley, through the J. F. Rowley Company, planted more seeds of trouble by causing his company to enter into two contracts with Albert T. Rowley (another brother) and Dwight C. Gregory. The first was a bill of sale by which the company sold to Albert and his associate certain goods and chattels "together with the good will of the business in the territory" about Pittsburgh as described, subject to the leasehold liability on premises known as the third floor of 627 Smithfield street, Pittsburgh, Pennsylvania. The second was a contract between the company and the same parties, containing a cross-reference to the bill of sale, whereby, further defining their business relations, they agreed that the company allow Albert and his associate the use of its trade-name, that it grant them the right to manufacture the Rowley leg, with the right and duty on their part to purchase the patented parts from the company, and to sell their product in the described territory from the designated salesroom on Smithfield street in consideration of a royalty of 10 per cent. on gross sales, the life of the contract being expressly limited to ten years.

Gregory withdrew and the business was conducted by Albert T. Rowley alone. Before the expiration of the term trouble arose. The Rowley Company acquired a new lease of the valuable trade premises over the head of Albert; and Albert, in order to establish a business site for himself before the expiration of the agreements, moved to new quarters at 725 Liberty street, Pittsburgh. After

the expiration of the agreements Albert continued in the artificial leg business. Confusion of mail between the parties and confusion of business representations ensued with the result that Albert T. Rowley, following other litigation not here relevant, filed a bill in the District Court charging the J. F. Rowley Company and J. F. Rowley with much wrong doing. First claiming a continued and exclusive ownership in the good will of the business of the J. F. Rowley Company conducted in the Pittsburgh district and the right to use its name by virtue of the first contract of February 13, 1915, he prayed an injunction restraining the company from doing business at the Smithfield street address in Pittsburgh or at any other place in the described territory; from interfering with him in his business conducted under the name of the J. F. Rowley Company in that territory; from demanding and receiving any mail addressed to the J. F. Rowley Company in Pittsburgh, Pennsylvania, or in Youngstown, Ohio, where he maintained an agency; from writing letters or sending circulars soliciting orders for artificial legs in the district; and generally from doing anything harmful to him or to his business conducted under the company name. The court entered the decree here on appeal comprising about a dozen paragraphs which we shall take up and dispose of seriatim. Of these the following is:

[1] "First. The bill of complaint is dismissed, except that pending final disposition of all matters at variance between the parties growing out of the plaintiff's use of the name 'the J. F. Rowley Company,' the court will retain jurisdiction."

This in effect is a holding against Albert T. Rowley's contention that in acquiring the tangible assets and good will of the J. F. Rowley Company through the cited contracts he acquired for all time the exclusive right to use the name the J. F. Rowley Company in the described territory. We are of opinion that the two agreements were intended to be and were parts of one transaction and that as they in words limited the plaintiff's right to the use of the company's name to a period of ten years, the plaintiff's right ended with the ending of the term.

The same reasoning applies to Albert T. Rowley's claim to the exclusive right to the established business location of the J. F. Rowley Company at 627 Smithfield street at Pittsburgh, Pa.

The first paragraph of the decree is affirmed.

[2] The second paragraph of the decree has many subdivisions and begins thus:

"Second. The plaintiff, Albert T. Rowley, his servants, agents, representatives and employees, are hereby perpetually restrained and enjoined:

"(a) From using the name 'the J. F. Rowley Company' in any manner or respect whatsoever in the manufacture and sale of artificial legs.

"(b) From using the name 'the J. F. Rowley Company' anywhere within or upon the premises at No. 725 Liberty avenue, Pittsburgh, Pennsylvania; or at No. 339 West Federal street, Youngstown, Ohio; or at any other place of business established or maintained by him.

"(c) From using the name 'the J. F. Rowley Company' in connection with telephone service in Pittsburgh, Pennsylvania; Youngstown, Ohio; and elsewhere."

These restraining provisions are but corollaries of the finding in the first paragraph that the plaintiff has no longer a right to the use of the company's name, and, when read in connection with what we shall say under paragraph (h), they are affirmed.

[3] That the plaintiff be enjoined:

"(d) From accepting, receiving, or retaining any mail addressed to the J. F. Rowley Company, and from interfering with the delivery of the said mail to said company through the regular channels of mail delivery, except that plaintiff may continue to receive and open mail addressed to No. 725 Liberty street, Pittsburgh, and retain the same and enclosures, if from any customers of plaintiff of a date prior to February 13, 1925."

Each party claims the right to all mail bearing the name "the J. F. Rowley Company," whether addressed to the defendants' Smithfield street place of business, to the plaintiff's Liberty street place of business, or generally to Pittsburgh, Pennsylvania. The address of each party may be a legitimate address to which mail bearing the company name can be properly addressed and received. Albert is entitled to his custom built up under the company name when the contracts were in force. It is possible that, in the situation, confusion may occur, but as both parties contributed to it by their contracts they must share the consequences. Construing the paragraph as denying Albert the right to mail directed to the company and addressed to the City of Pittsburgh without street and number, and as limiting his right to mail from old customers addressed to his place of business at 725 Liberty street, we believe the learned trial judge solved this

problem as fairly as it can be solved. Paragraph (d) is affirmed.

[4, 5] That the plaintiff be enjoined:

"(e) From using the letter heads or copies thereof, and the cable address of the defendant company.

"(f) From representing that he is the manufacturer and seller of the artificial limbs which were awarded the Gold Medal at the International Exposition of Artificial Limbs in London, in 1915.

"(g) From the use of any of the J. F. Rowley Company's catalogues, literature, or letters, the cuts, photographs, drawings, and written contexts therein and thereon, in the advertisement of, solicitation of orders for, or sale of any artificial leg."

These provisions are but legal consequences of the court's first finding, and are affirmed.

[6] That the plaintiff be enjoined:

"(h) From the use of the name 'Rowley,' either alone or in combination with other words or letters, to designate any artificial leg or legs hereafter manufactured or offered for sale or sold by him, except that in that connection the plaintiff may use the name 'Albert T. Rowley' or 'Albert T. Rowley Company.'"

The controversy reached its highest temperature on this paragraph and the next.

There can be no doubt that one other than the J. F. Rowley Company may make and sell artificial legs. This was decided by both courts in the first Rowley Case. 154 F. 744; 161 F. 94. It was also there decided that no one but the J. F. Rowley Company can make and sell a "Rowley" leg and that any one bearing that name who should embark in the artificial leg business must, for the protection of the public against confusion as well as for the protection of the company's property rights, clearly distinguish his legs from those made by and bearing the stamp of the J. F. Rowley Company. So the cited decision was not only the law of that case but it has become the law of the Rowley leg. The Rowley leg is a fact. It is a single thing known to the world; there cannot be two such things. Albert, though his surname be Rowley, cannot manufacture and sell a leg which his brother started to manufacture and sell half a century ago and to which, through merit, he has given a name of distinctive meaning and world-wide recognition. Albert may manufacture legs, and if he persist in the business—as he has a right to do—he must do it in a way that will unmistakably distinguish the legs of his manufacture from

those of the manufacture of his brother. This, we think, should be done in the way determined and adjudged in the first Rowley Case, namely; by stamping on his product the formula: "Distinct from and having no connection whatever with the J. F. Rowley Company." When modified in this respect, paragraph (h) is affirmed.

[7] Further addressing itself to this paragraph, the defendants maintain that the learned trial judge erred in not including in it an order enjoining Albert from making and selling artificial legs "in imitation of the legs made and sold by the defendant company, in which the dress, covering and appearance of the finished products is so close an imitation of the 'Rowley' leg as to be likely to deceive the public or prospective purchasers."

Such a provision in the paragraph would only be a match with which to start a new fire. Moreover, such a provision would in the nature of things be difficult, if not impossible, to formulate fairly. All artificial legs evidently are made in the semblance of natural legs, in color, shape and contour. If all artificial legs are made in imitation of natural legs, then, paraphrasing the geometrical proposition, it follows that two artificial legs which resemble a natural leg must resemble each other, and the position of the defendants, if sustained, would make it impossible for Albert to make a leg in imitation of a human leg without at the same time imitating the Rowley leg. We think the court, by paragraph (j) gave the defendants complete protection.

[8] That the plaintiff be enjoined:

"(i) From using the name 'Rowley' either alone or in combination with other words or letters, to designate the name, ownership, or management of the business of the plaintiff in manufacturing, soliciting orders for, or selling artificial legs, except that the plaintiff may use in that connection the name 'Albert T. Rowley' or 'Albert T. Rowley Company.'"

The defendants vigorously oppose the right which the court by this paragraph has given Albert to engage in the artificial leg business under his own name or through a company bearing his name. They then recede from this position and say that, in any event, Albert should accompany his tradename with words similar to those now required to be stamped on the leg whereby his name can always be distinguished from that of the defendant company. In this connection we return to the first Rowley Case (161 F. 94), in which this court held that the other

brother of J. F. Rowley, there a party, "has a right to carry on the business of manufacturing artificial limbs in his own name, and, though the abuse of that right must be prevented, its exercise should not be absolutely prohibited," basing its ruling by express citation on the law of Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118; Herring-Hall-Marvin Safe Co. v. Hall Safe Co., 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616, and substantially on the law later announced in Waterman Pen Co. v. Modern Pen Co., 235 U. S. 88, 35 S. Ct. 91, 59 L. Ed. 142. The same thought applies to Albert T. Rowley.

Paragraph (i) is affirmed.

[9] That the plaintiff be enjoined:

"(j) From selling, or offering for sale, any artificial legs as goods made and sold by the defendant company."

This paragraph is so obviously right that it is affirmed without comment.

[10] The defendants charge error to the court for refusing to include in its decree an order that Albert account for profits and damages during the period covered by his unfair competition. In refusing an accounting the learned trial judge evidently acted on the theory that Albert had bought and paid for the good will of the defendant company in the Pittsburgh district and at the same time he had acquired the right there to do business for ten years under its name. This being true, Albert surely is entitled to all business attributable to the good will which he had bought and paid for as well as to that attributable to the good will which he himself had built up when he was acting under the name of the defendant company with its consent during the contract period. Therefore it would seem that all custom which came to him after February 13, 1925 (the date of the ending of the contract), attributable to the good will bought and to the good will earned, would be his of right and it would be difficult, if not impossible, to determine the portion that would be attributable solely to his wrongful use of the name "Rowley" during the period between the termination of the contract and the rendering of the decree. When a situation is presented which shows an impossibility of an accounting, courts have done as this court did in Rosenberg Bros. & Co. v. Elliott, 7 F.(2d) 962, where we said: "The case is peculiarly one where such damage as has occurred is incapable of computation. We see no reasonable probability that any substantial damages could be proved and reduced to dollars with that degree of accuracy which is essential." And so here we think the court very properly refused an accounting.

[11] And finally, the defendants maintain that as the court formally dismissed the plaintiff's bill of complaint and thereby nullified it, it was without jurisdiction to grant the plaintiff affirmative relief in allowing him to use his own name as a trade-name in his business.

It should be observed that the court retained jurisdiction to do what it did. Moreover it did not dismiss the cross-bill. If we had any doubt about the matter, we should quiet it once and for all by denying the defendant company the relief which the court granted it unless it agreed to the relief the court granted the plaintiff.

The decree when modified as indicated is affirmed with two-thirds of the costs in this court on appeal to be taxed against Albert T. Rowley and one-third thereof to be taxed against the J. F. Rowley Company and J. F. Rowley.